UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEGGY L. CLINE,

      Plaintiff,

v.                                                                  CASE No. 8:10-CV-465-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

O R D E R

The plaintiff in this case seeks judicial review of the denial of

her claim for Social Security disability benefits.[1] Because the decision of the

Commissioner of Social Security is supported by substantial evidence and

contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-eight years old when her insured

status expired and who has a high school education (Tr. 37), has worked as

a bus driver, deli clerk, daycare worker, and packager (Tr. 37, 39, 41). She

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 17).

filed a claim for Social Security disability benefits, alleging that she became disabled due to heart attacks, diabetes, high blood pressure, depression, and neuropathy (Tr. 126). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff last met the earnings requirements for disability benefits on December 31, 2006 (Tr. 19). She determined that, as of that date, the plaintiff had severe impairments of "coronary artery disease, status post myocardial infarction with stent placement times two, fibromyalgia, sacroiliac joint dysfunction, obesity, insulin-dependent diabetes mellitus, an affective disorder and an anxiety-related disorder" (<u>id</u>.). The law judge concluded that these impairments limited the plaintiff as follows (Tr. 21):

> [She can] lift 10 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday and stand/walk for two hours in an eight-hour workday. She was required to avoid extreme cold and heat and hazards. The claimant was able to do simple, routine and repetitive tasks.

The law judge found that these restrictions prevented the plaintiff from performing past work (Tr. 26). However, based upon the testimony of a vocational expert, the law judge concluded that the plaintiff could perform jobs that exist in significant numbers in the national economy, such as sedentary work of order and food/beverage clerk and electronics assembler (Tr. 27). She, accordingly, decided that the plaintiff was not disabled at any time from the alleged onset date of September 24, 2004, though December 31, 2006 (Tr. 28). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. 423(d)(3). In this case, the plaintiff must show that she became disabled before her insured status expired on December 31, 2006 (Tr. 121). 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979). cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB. 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied. 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts. to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

-4-

the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

As indicated, the relevant period in this case is from September 24, 2004, the alleged disability onset date, to December 31, 2006, the date the plaintiff's insured status ended. The evidence in the record includes medical information from before that period and from after that period. Such evidence is relevant only insofar as it sheds light on the plaintiff's condition during the pertinent period. At times, the plaintiff's arguments ignore the lack of

relevance of the medical evidence from outside the period from September 24, 2004, to December 31, 2006.[2]

The law judge concluded that the plaintiff was not disabled between September 24, 2004, and December 31, 2006, and was therefore not entitled to disability insurance benefits. The plaintiff challenges the law judge's decision on three grounds. None of the plaintiff's contentions warrants reversal.

A. First, the plaintiff argues that the law judge did not properly follow the Eleventh Circuit pain standard in making his credibility determination (Doc. 18, p. 8). The challenges are meritless.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required

_____

[2]Notably, the plaintiff's condition appears to have worsened after her insured status expired. For example, she had heart surgery in March 2008. Further, she was diagnosed with problems in her upper extremities in February 2008. These problems are not relevant to her application for disability insurance benefits. However, as plaintiff's counsel indicated at the hearing, they may, along with her existing impairments, support a new application for widow's benefits as of the time the plaintiff turned fifty (Tr. 34). Also, as the Commissioner notes, she may be financially eligible for supplemental security income. Such claims, however, were not before the law judge.

evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

       The law judge in connection with her credibility determination expressly articulated the process for evaluating subjective complaints that are set out in the regulations and Social Security Rulings (Tr. 21). Moreover, citing two Eleventh Circuit decisions, the law judge specifically stated the Eleventh Circuit pain standard (Tr. 22). Consequently, there is no basis for thinking that the law judge ignored that standard.

       The plaintiff suggests that the law judge did not properly apply the standard because she did not make an express finding that the plaintiff

had underlying medical conditions that could reasonably give rise to the subjective complaints (Doc. 18, p. 9). However, such a finding is clearly implicit in the law judge's credibility determination. Thus, the law judge went to the second part of the evaluation process and directly assessed the credibility of the plaintiff's allegations (Tr. 25). This aspect of the pain standard is not reached unless the law judge has first determined that the underlying medical condition could reasonably have given rise to the pain and other subjective complaints.

The plaintiff contends further that the law judge failed to name the underlying conditions which could reasonably be expected to cause the plaintiff's alleged pain (Doc. 18, p. 9). There is no such specification requirement. In any event, the law judge identified a number of severe physical impairments (Tr. 19). The law judge obviously considered that those impairments, taken together, could reasonably give rise to the subjective complaints that were alleged. Accordingly, the law judge appropriately proceeded to consider the credibility of the plaintiff's allegations.

Moreover, contrary to the plaintiff's suggestion, the law judge's credibility determination was detailed. Thus, she stated (Tr. 25-26):

-8-

While it is reasonable to conclude that the claimant should have some pain and/or limitations as a result of her physical and mental impairments, the evidence as a whole does not substantiate such severe functional limitations that would preclude her from all work-related activity as is required under Social Security rules and regulations from the alleged onset date of September 24, 2004, through her date last insured of December 31, 2006. The medical evidence shows that the claimant has a history of stent placement times two due to coronary artery disease in 2001 and 2003. However, the medical evidence shows that the claimant['s] cardiac condition appears stable. An EKG conducted in April 2004 was essentially normal. An echocardiogram conducted in October 2004 demonstrated a normal ejection fraction. The medical evidence shows that, during the relevant period, the claimant's diabetes appeared not well controlled. However, the medical evidence further shows that the claimant was noncompliant with weight loss, diabetic diet and medications. The claimant also complains of neck and back pain. However, the record fails to show that the claimant required periods of hospitalization or emergency room treatment. Nor does the record show such a marked diminished range of motion or muscle atrophy as would accompany the alleged disability. Physical examinations have also failed to show significant tenderness of trigger points of the spine. Moreover, the medical evidence shows that the claimant was treated with conservative treatment and that she responded well with sacroiliac joint injections. X-rays of the lumbar spine were normal without significant degenerative changes.

The medical evidence also documents a history of depression and anxiety since March 2004.

However, the medical evidence fails to show that the claimant received any psychological counseling or psychiatric treatment for any mental condition prior to December 31, 2006, her date last insured. The claimant did undergo a psychological consultative evaluation conducted by Dr. [Steven K.] Abraham in October 2006. However, on mental status examination, the claimant appeared cooperative. She maintained good eye contact. Her thought processes were logical and speech spontaneous. There was no evidence of delusions or phobias and the claimant denied any suicidal or homicidal ideations. She also denied any form of hallucinations. She was alert and oriented in all spheres. Overall, I find the claimant's testimony and subjective statements regarding [her] pain and limitations credible to the extent of establishing that [s]he has a combination of severe impairments, but not fully credible to the extent of establishing that these impairments are so severe to preclude [her] from performing substantial gainful activity as required under Social Security rules and regulations. Accordingly, I find the claimant's stated symptoms somewhat exaggerated over that [which] would be expected based on the medical findings in the record (SSR 96-7p).

Significantly, the law judge did not totally reject the plaintiff's subjective allegations. To the contrary, she found that the plaintiff was limited to sedentary work with additional environmental and mental limitations (Tr. 21). While the law judge found that the plaintiff was not entirely credible, her stated reasons for that finding are adequate and supported by substantial evidence. Therefore, this court is not authorized to

Case 8:10-cv-00465-TGW   Document 21   Filed 08/10/11   Page 11 of 23 PageID 822

overturn the law judge's credibility determination. Arnold v. Heckler, 732 F.2d 881, 883-84 (11th Cir. 1984).

The plaintiff's challenge to the law judge's credibility determination is limited to two comments made by the law judge in that determination. Thus, the plaintiff argues that the law judge "misapplied" the Eleventh Circuit's pain standard by considering the following two factors: (1) the plaintiff's noncompliance with doctors' recommendations to lose weight; and (2) the lack of hospitalizations or emergency room records.

In the first place, to the extent the plaintiff contends that noncompliance with dietary restrictions and lack of hospitalizations are not contemplated as relevant factors for consideration under the regulation for evaluating symptoms, including pain, that contention is meritless (Doc. 18, p. 10).[3] Thus, while 20 C.F.R. 404.1529(c)(3) specifies certain factors that may be considered, that list is not exclusive. See 20 C.F.R. 404.1529(c)(3)(vii).

The record in this case contains accounts of physicians' unheeded diet recommendations (see, e.g., Tr. 266, 273, 276, 283). Treating

---

[3]The plaintiff referred under this heading to 20 C.F.R. 404.1529(c)(2) in support of her argument. However, that section does not list any "factors." The plaintiff, rather, appears to be referring to the "factors" listed in 20 C.F.R. 404.1529(c)(3) (Doc. 18, pp. 8-10).

cardiologist, Dr. Peter Knight, on April 27, 2004, instructed the plaintiff to follow "very strict[ly]" the South Beach diet (Tr. 212). Moreover, the plaintiff's treating primary care physician indicated that the plaintiff's poorly controlled diabetes is due, in part, to failure to follow a diet (Tr. 262).

In connection with finding the plaintiff less than fully credible, the law judge, after noting that the plaintiff's diabetes was not well controlled, stated that "the medical evidence further shows that the claimant was noncompliant with weight loss, diabetic diet and medications" (Tr. 25). Thus, the law judge thought, reasonably enough, that, if the plaintiff's uncontrolled diabetes was as disabling as she said, she would have taken steps to lose weight in order to improve the condition. Importantly, the Eleventh Circuit has ruled that noncompliance with doctors' recommendations may be considered as part of a credibility determination. Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir. 2003). Further, the law judge provided numerous reasons for finding the plaintiff not entirely credible and therefore, did not significantly base her determination that the plaintiff was not disabled on her noncompliance with a diet. Mack v. Commissioner of Social Security, 2011 WL 989813 (11th Cir. 2011)(unpub. dec.). Consequently, the law judge did not err in mentioning the plaintiff's

noncompliance with recommended weight loss in connection with her credibility determination.[4]

The law judge also appropriately considered in connection with the plaintiff's credibility that her conditions never required "periods of hospitalization or emergency room treatment" (Doc. 18, p. 10). As the Commissioner points out, hospitalization is a reasonable factor to consider because it demonstrates a significant impact on her daily living and the seriousness of her illness. 20 C.F.R 404.1529(c)(3). Moreover, it was only one factor among the many discussed by the law judge.

Citing to the medical records of treating pain management physician Dr. Osman A. Latif, the plaintiff asserts also that the law judge failed to consider "all the other treatments [she] received for pain" (Doc. 18, p. 10). Dr. Latif treated the plaintiff at the Watson Clinic several times in 2004 to 2006 for pain associated with her back and sacroiliac joint. During the relevant time period, she received from Dr. Latif sacroiliac joint

---

[4]Although not noted by either party, the law judge clearly erred in stating that the plaintiff weighed 325 pounds at a height of 5'5" in December 2008 (Tr. 21). The exhibit cited by the law judge shows no such thing. That is a Physical Residual Functional Capacity Assessment Form filled out by a nonexamining reviewing physician. Moreover, it indicates a weight of 169 pounds (Tr. 349). Furthermore, that is just one pound more than the plaintiff stated she weighed in July 2006 in connection with her application for benefits (although she listed her height as 5'3") (Tr. 125). Thus, while the plaintiff may have been obese during the relevant period, she was nowhere near as obese as the law judge erroneously said she was in December 2008.

injections. The law judge discussed that in his decision. He pointed out that the plaintiff had "responded well" to the sacrociliac joint injections (Tr. 22). Thus, the law judge plainly did not overlook this treatment. Moreover, although not raised by the plaintiff, the law judge also discussed treatment by another pain management specialist, Dr. George S. Sidhom (Tr. 23).

As indicated, the law judge's credibility determination was adequate and supported by substantial evidence. Certainly, the plaintiff has not shown that the evidence compels a finding that she is entirely credible. Adefemi v. Ashcroft, supra, 386 F.3d at 1027.

B. The plaintiff's next heading is styled "[t]he ALJ failed to consider all impairments in combination in her decision" (Doc. 18, p. 11). The plaintiff makes no meaningful argument that the law judge failed to consider the combined effects of the plaintiff's impairments. The law judge specifically recognized the need to consider the combined effects (Tr. 18, 20). See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002). Further, in her residual functional capacity determination the law judge clearly did that, since she included various physical, environmental, and mental limitations.

The thrust of this contention is that the law judge failed to address the degree of impairment caused by the plaintiff's neuropathy, blurred

vision, cupital tunnel syndrome, and carpel tunnel syndrome. She also argues the law judge failed to state the weight accorded each of those items of impairment (Doc. 18, p. 11). These contentions are meritless.

The plaintiff was diagnosed with diabetic neuropathy in March 2003 by primary care physician Dr. Cindy A. Kelly (Tr. 313). In connection with her application for benefits, the plaintiff was sent to consultative examiner Dr. R. Salari on September 29, 2006, who opined that the plaintiff experienced decreased sensation to pain and light touch in the lower extremities from neuropathy (Tr. 342). Dr. Salari found further that "the abnormalities with respect to her lower extremities are related to diabetic neuropathy" (Tr. 343). The law judge discussed these findings in his decision (Tr. 22, 23), thereby demonstrating that he did not overlook the problem of diabetic neuropathy. The law judge, furthermore, specifically found that the plaintiff had a severe impairment of insulin-dependent diabetes mellitus (Tr. 19). Neuropathy is simply one symptom of that impairment, and the law judge is not required to treat it as a separate impairment or make a specific finding about it.

However, what the law judge has to do is include in his residual functional capacity assessment any functional limitation arising from

neuropathy. The law judge did that in this case. As the law judge recognized (Tr. 23), Dr. Salari found that the plaintiff's gait and station were essentially normal, although she could do only a partial squat due to back pain (Tr. 342). Moreover, the plaintiff's muscle strength was 5/5 in her lower right extremity and 4/5 in her lower left extremity. Repetitive movement of the legs against resistence caused no early fatigue and she had no muscle atrophy (id.).

The plaintiff does not show how the neuropathy and decreased lower extremity sensation affect her ability to do sedentary work. See Moore v. Barnhart, 405 F.3d 1209, 1213 n.6 (11th Cir. 2005); McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Importantly, at the hearing, the plaintiff's counsel stated that neuropathy would reduce her to a sedentary level of functioning (Tr. 64). And, the law judge concluded that the plaintiff's impairments reduced her functional capacity to a sedentary level of exertion (Tr. 21). Therefore, since the plaintiff has failed to show any additional functional limitations from neuropathy, the law judge did not err with respect to that condition.

The plaintiff next points to records beginning in 2008, well after her last insured date of December 31, 2006, showing cubital tunnel syndrome and carpal tunnel syndrome. As the law judge recognized, the notes do not

purport to relate back to the period before her date last insured (Tr. 26). Moreover, upon review of the medical opinions, there is nothing contained in them that purport to relate back to the insured period. Therefore, the evidence does not establish that the symptoms identified were present during the time period at issue.

Moreover, as the Commissioner points out, there is substantial evidence in the record showing that the symptoms identified were not present prior to 2008. Thus, Dr. Salari's consultation in 2006 revealed the plaintiff's handgrip strength was 5/5 and fine movement of the hands was intact (Tr. 342). The plaintiff was "able to pick up objects, button and unbutton shirt, and open a door. Repetitive movement of hands caused no early fatigue or change in muscle tone" (id.).

Furthermore, the condition is not alleged in the plaintiff's application for benefits, and, at the hearing, the plaintiff did not mention any hand or wrist problems. Under those circumstances, this condition is appropriately disregarded. Robinson v. Astrue, 365 Fed. Appx. 993, 995 (11th Cir. 2010)(unpub. dec.)(the law judge was not under an obligation to investigate a claim that is not presented in the application for disability

benefits or through hearing testimony); <u>Street</u> v. <u>Barnhart</u>, 133 Fed. Appx. 621, 627 (11th Cir. 2005)(unpub. dec.).

Similarly, the plaintiff has not shown that she suffered from blurred vision during the relevant period. While the plaintiff complained of blurred vision in September 2007, she merely said that it had been bothering her for two weeks (Tr. 391). Notably, two nonexamining reviewing physicians each opined that the plaintiff had no visual limitations during the relevant period (Tr. 350, 386). Moreover, as the law judge noted, the plaintiff acknowledged that she had a driver's license with no restrictions (Tr. 25).

In addition, as the Commissioner points out, blurred vision is not alleged in the plaintiff's application for benefits and she did not testify to the condition at the hearing (<u>see</u> Tr. 43-44, 126). Accordingly, this condition is also appropriately disregarded. <u>Robinson</u> v. <u>Astrue</u>, <u>supra</u>, 365 Fed. Appx. at 995.

For these reasons, the plaintiff's argument that this case should be reversed because the law judge did not consider neuropathy, blurred vision, cupital tunnel syndrome, and carpal tunnel syndrome is meritless. Similarly, the plaintiff's conclusory contention that the law judge did not evaluate her impairments in combination is also baseless.

C. The plaintiff's final challenge is entitled "[t]he ALJ failed to fully and fairly develop the record" (Doc. 18, p. 13). The focus of the plaintiff's contention is that the law judge failed to contact treating physicians Dr. Bharminder S. Bedi and Dr. Sidhom to clarify whether notes indicating a disability assessment opined after her date last insured related back to the relevant time period. The plaintiff contends the law judge should have recontacted the treating physicians "for clarification of the treatment dates" contained in the post-insured date records (id.). That argument is unpersuasive.

Dr. Bedi, a psychiatrist, opined on May 15, 2008, in a progress note, that the doctor "do[es] not think [the plaintiff] can go out and find a job as she is also a diabetic and has neuropathy" (Tr. 432). On June 6, 2008, Dr. Sidhom wrote a "Work Excuse" note, stating as follows (Tr. 478):

> I recommend that you extend [the plaintiff] the courtesy of excuse from her work duties for a period of 6 months. Further updates of the medical condition can be made available upon request. She will begin interventional injection therapy series at which time she will be re-evaluated for her work status.

In this case, the law judge reasonably concluded that Dr. Bedi's and Dr. Sidhom's opinions did not establish disability "prior to her date last insured" (Tr. 26)(emphasis in original).

In discounting these opinions, the law judge also stated that "the doctors failed to frankly address the paucity of the objective evidence compared to the claimant's subjective complaints and self-reported symptoms prior to the claimant's date last insured" (id.). The law judge, in other words, concluded that the opinions were not supported by the objective medical evidence, and that the doctors did not provide any basis for their opinions. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). She added that the finding of disability is an issued reserved to the Commissioner. 20 C.F.R. 404.1527(e); Shaw v. Astrue, 392 Fed. Appx. 684, 687-88 (11th Cir. 2010) (unpub. dec.).

In an attempt to bolster the opinions, the plaintiff asserts that the law judge should have recontacted the doctors. She is vague, however, about the purpose of the further contact; it is unclear whether the contact would be to obtain additional treatment data, or to obtain more relevant opinions. Regardless, the contention is unpersuasive.

The plaintiff points out that the law judge has a basic duty to develop a full and fair record. Ellison v. Barnhart, supra, 355 F.3d at 1276. However, the basic principle for recontacting a physician is that the evidence that has been received is inadequate for a disability determination. 20 C.F.R. 404.1512(e); Johnson v. Barnhart, 138 Fed. Appx. 186, 189 (11th Cir. 2005) (unpub. dec). Generally, it is only necessary to recontact a physician if there are gaps in the record. See Gallina v. Commissioner of Social Security, 202 Fed. Appx. 387 (11th Cir. 2006)(unpub. dec.); Johnson v. Barnhart, supra. Moreover, a remand is not warranted unless the plaintiff can demonstrate the evidentiary gaps result in "unfairness or clear prejudice." Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 586 (11th Cir. 1991).

As the law judge's decision shows, she obviously did not think that the record was inadequate for her to make a ruling. She considered the doctors' opinions and gave several reasons for rejecting them. The law judge emphasized that the opinions did not relate to the relevant period. Thus, Dr. Sidhom's note excused the plaintiff from work for six months into the future, beginning on June 6, 2008. Moreover, Dr. Bedi's 2008 opinion that the plaintiff cannot "go out and find a job" obviously refers to her current status.

and not her abilities eighteen months previously. It should be noted further that Dr. Bedi, as a psychiatrist, is commenting on the plaintiff's physical ability to work, an area outside the professional's expertise.

The plaintiff mentions under this heading that, apparently, there are missing notes from Dr. Bedi prior to October 31, 2007, and from Dr. Sidhom prior to November 13, 2007 (Doc. 18, p. 13). However, even assuming that there are such records, the plaintiff does not show that the records may contain significant information pertaining to her claim of disability.

Furthermore, the plaintiff does not assert that the missing records apply to the twelve-month period prior to her application date of July 10, 2006. Thus, the regulations provide that the Social Security Administration "will develop [the claimant's] complete medical history for at least the 12 months preceding [the] application unless there is a reason to believe that development of an earlier period is necessary or unless [the claimant] say[s] that [her] disability began less than 12 months before [she] filed [her] application." 20 C.F.R. 404.1512(d). In other words, the Commissioner only has a duty to obtain records from before the date of the application. Accordingly, the Eleventh Circuit has held that the law judge is "in no way

bound to develop the medical record" for the subsequent period. Ellison v. Barnhart, supra, 355 F.3d at 1276. Thus, "the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim." Id.

In this case, from all that appears, the opinions from the doctors were obtained either by the plaintiff or her attorney. The attorney, prior to submission, should have recognized that the opinions were inadequate. Consequently, the lawyer, or the plaintiff, should have recontacted the doctors in an attempt to obtain better opinions. The plaintiff cannot plausibly blame the law judge for not doing so.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this _10th_ day of August, 2011.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-23-